PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| WEBSENSE, INC., a Delaware Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant Websense, Inc. ("Defendant" or "Websense") and alleges as follows:

### THE PARTIES

1.      Finjan is a Delaware corporation, with its corporate headquarters at 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801.  Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.      Websense is a Delaware corporation, with its principal place of business at 10240 Sorrento Valley Road, San Diego, California 92121.

### JURISDICTION AND VENUE

3.      This action arises under the Patent Act, 35 U.S.C. §§ 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District.  Defendant also markets its products primarily in and from this District. In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

### INTRADISTRICT ASSIGNMENT

6.      Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

1

**FINJAN'S INNOVATIONS**

7.     Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in the developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

8.     Finjan built and sold software, including APIs, and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet.  Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues.

9.     Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

10.     On June 6, 2006, U.S. Patent No. 7,058,822 ("the '822 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '822 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

11.     All rights, title, and interest in the '822 Patent have been assigned to Finjan, who is the sole owner of the '822 Patent.  Finjan has been the sole owner of the '822 Patent since its issuance.

12.     The '822 Patent is generally directed towards computer networks and more particularly provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.  Additionally, the system provides a way to analyze such web-content to determine whether it can be executed.

13.     On January 12, 2010, U.S. Patent No. 7,647,633 ("the '633 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '633 Patent is attached to this Complaint as Exhibit B and is incorporated by reference herein.

14.     All rights, title, and interest in the '633 Patent have been assigned to Finjan, who is the sole owner of the '633 Patent.  Finjan has been the sole owner of the '633 Patent since its issuance.

15.     The '633 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether

3

any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.

16.     On July 17, 2012, U.S. Patent No. 8,225,408 ("the '408 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Sholomo Touboul, Alexander Yermakov and Amit Shaked. A true and correct copy of the '408 Patent is attached to this Complaint as Exhibit C and is incorporated by reference herein.

17.     All rights, title, and interest in the '408 Patent have been assigned to Finjan, who is the sole owner of the '408 Patent.  Finjan has been the sole owner of the '408 Patent since its issuance.

18.     The '408 Patent is generally directed towards a scanner for identifying potential exploits within an incoming data stream.  One way this is accomplished is to create a parse tree for the incoming content and dynamically detecting combinations of nodes of the parse tree that indicate potential exploits in the content.

19.     On March 20, 2012, U.S. Patent No. 8,141,154 ("the '154 Patent"), entitled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '154 Patent is attached to this Complaint as Exhibit D and is incorporated by reference herein.

20.     All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent.  Finjan has been the sole owner of the '154 Patent since its issuance.

21.     The '154 Patent is generally directed towards a gateway computer protecting a client computer from dynamically generated malicious content.  One way this is accomplished is to use a content processor to process a first function and invoke a second function if a security computer indicates that it is safe to invoke the second function.

4

**WEBSENSE**

22.     Websense makes, uses, sells, offers for sale, and/or imports into the United States and this District its TRITON Products, Web Security Gateway Products, Data Security Products, the CyberSecurity Intelligence ("CSI") Service and the ThreatSeeker Network Service.

23.     Websense's TRITON Products include the software and appliances running TRITON Enterprise, TRITON Security Gateway Anywhere and TRITON Security Gateway.  *See* http://www.websense.com/content/websense-triton-security-products.aspx (attached as Exhibit E).

24.     Websense's Web Security Gateway Products include the software and appliances running Web Security Gateway, Web Security Gateway Anywhere, Cloud Web Security Gateway and ACE in the Cloud.  *See* http://www.websense.com/content/websense-web-security-products.aspx (attached as Exhibit F).

25.     Websense's Data Security Products include the software and appliances running Data Security Suite and Data Security Gateway.  *See* http://www.websense.com/content/websense-data-security-products.aspx (attached as Exhibit G).

26.     Shown below is a diagram of Websense's products and services.  *See* WP_HoneyGrid_Computing.pdf at 5 (attached as Exhibit H):

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16

17    27.    The TRITON Products, Web Security Gateway Products and CSI Service rely on the

18 Websense ThreatSeeker Network.  The ThreatSeeker Network seeks out threats contained within

19 web, social media and email content and analyzes three to five billion requests per day.  The TRITON

20 Products, Web Security Gateway Products, CSI Service and Websense ThreatSeeker Network utilizes

21 Websense's Advanced Classification Engine ("ACE") to detect malicious content.  ACE and the

22 ThreatSeeker Network are maintained by Websense and the Websense Security Labs.  *See*

23 http://www.websense.com/content/websense-triton-security-products.aspx (attached as Exhibit E);

24 http://www.websense.com/content/web-security-gateway-features.aspx (attached as Exhibit I);

25

26 datasheet-ace-in-the-cloud-en.pdf (attached as Exhibit J); datasheet-csi-en.pdf (attached as Exhibit

27 K); and http://www.websense.com/content/websense-threatseeker-network.aspx (attached as Exhibit

28

6

L).  Shown below is a diagram depicting technologies in Websense's ACE.  *See* <u>datasheet-ace-in-the-cloud-en.pdf</u> at 2 (attached as Exhibit J):



28.     ACE provides inline contextual defenses for web, email, data and mobile security using analytics to create a composite risk score for downloaded content and is the primary engine for all of Websense's TRITON Products.  ACE includes Real-Time Security Classification ("RTSC") for detection of exploit code and malicious browser plugins, JavaScript, ActiveX, shell code, exploit kits, cross-site scripts and incorporated built-in parsing, obfuscation detection and de-obfuscation.  *See* <u>Websense_ACE_77_WhitePaper.pdf</u> at 3-4 (attached as Exhibit M); *see also* <u>ACE_Insight_Sample.pdf</u> (attached as Exhibit N), <u>http://www.websense.com/content/websense-advanced-classification-engine.aspx</u> (attached as Exhibit O).

29.     CSI Service includes the ThreatScope online sandbox for detecting potential malware. The ThreatScope monitors all activity of potential malware and documents all activity in a detailed report including the infection process, post-infection activities including network communications, system-level events and processes and registry changes and file modifications.  ThreatScope takes the observed behavior and correlates it with known threats to provide information on zero-day threats in

7

real-time.  *See* datasheet-csi-en.pdf (attached as Exhibit K); *see also* ThreatReport-Complete.pdf

(attached as Exhibit P).

30.     Websense Data Security Products and TRITON Products detect unusual behavior in a

network such as small amounts of confidential data being sent over multiple communications

channels, or over an extended period of time.  *See* www.websense.com/content/data-security-suite-

features.aspx (attached as Exhibit Q).  Websense Data Security Products and TRITON Products

include cumulative incident memory that remembers a user's breaches over time and creates incidents

when a threshold is met, as well as machine learning for establishing examples of content that a user

wants to protect.  *See* v7.7 Release Notes for Websense® Data Security at 2-3 (attached as Exhibit

R).

31.     Websense TRITON Products and Web Security Gateway Products can filter files

based on their true file type.  The TRITON Products and Web Security Gateway Products utilize

content stripping to remove unwanted or potentially malicious content.  *See* Triton_web_help.pdf at

pages 198-99, 282-83 and 286-87 (attached as Exhibit S).

## WEBSENSE'S INFRINGEMENT OF FINJAN'S PATENTS

32.     Defendant has been and is now infringing the '822 Patent, the '633 Patent, the '408

Patent and the '154 Patent (collectively "the Patents-In-Suit") in this judicial District, and elsewhere

in the United States by, among other things, making, using, importing, selling, and/or offering for sale

the claimed systems and methods on the Websense TRITON Products, Web Security Gateway

Products, Data Security Products, CSI Service, ThreatSeeker Network and products or services using

ACE.

33.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a)

either literally or under the doctrine of equivalents, Defendant indirectly infringes the '822 Patent, the

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

'633 Patent and the '408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of method claims of the '822 Patent, the '633 Patent and the '408 Patent, respectively, either literally or under the doctrine of equivalents.

## COUNT I
### (Direct Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(a))

34.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

35.     Defendant has infringed and continues to infringe one or more claims of the '822 Patent in violation of 35 U.S.C. § 271(a).

36.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

37.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

38.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker, which embody the patented invention of the '822 Patent.

39.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

40.     Defendant's infringement of the '822 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

1

## COUNT II
### (Indirect Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(b))

2

3       41.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the

4   allegations of the preceding paragraphs, as set forth above.

5       42.     Defendant has induced and continues to induce infringement of at least claims 1, 2, 4,

6   5, 6, 8, 16, 17, 18, 19, 23, and 24 of the '822 Patent under 35 U.S.C. § 271(b).

7       43.     In addition to directly infringing the '822 Patent, Defendant indirectly infringes the

8   '822 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including

9   but not limited to its customers, users and developers, to perform all or some of the steps of the

10  method claims, either literally or under the doctrine of equivalents, of the '822 Patent, where all the

11  steps of the method claims are performed by either Websense or its customers, users or developers, or

12  some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing

13  others, including customers, users and developers, to infringe by practicing, either themselves or in

14  conjunction with Defendant, one or more method claims of the '822 Patent.

15

16      44.     Defendant knowingly and actively aided and abetted the direct infringement of the

17  '822 Patent by instructing and encouraging its customers, users and developers to use the Websense

18  TRITON Products, Web Security Gateway Products, CSI Service and Websense products and

19  services using ACE or ThreatSeeker.  Such instructions and encouragement include, but are not

20  limited to, advising third parties to use the Websense TRITON Products, Web Security Gateway

21  Products, CSI Service and Websense products and services using ACE or ThreatSeeker in an

22  infringing manner; providing a mechanism through which third parties may infringe the '822 Patent,

23  specifically through the use of the Websense TRITON Products, Web Security Gateway Products,

24  CSI Service and Websense products and services using ACE or ThreatSeeker, advertising and

25  promoting the use of the Websense TRITON Products, Web Security Gateway Products, CSI Service

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

and Websense products and services using ACE or ThreatSeeker in an infringing manner, and

distributing guidelines and instructions to third parties on how to use the Websense TRITON

Products, Web Security Gateway Products, CSI Service and Websense products and services using

ACE or ThreatSeeker in an infringing manner.

45.    Websense regularly updates and maintains the Websense website

(http://www.websense.com) and the Websense Support Center

(http://www.websense.com/content/support.aspx), as well as the Websense ACE Insight™ and

ThreatScope™ Portals (*see* http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index)

to provide demonstration, instruction, and technical assistance to users to help them use the Websense

TRITON Products, Web Security Gateway Products, CSI Service and Websense products and

services using ACE or ThreatSeeker, including:

- Industry firsts make Websense® TRITON™ second to none (*see e.g.*, http://www.websense.com/content/TRITONseven7.aspx, attached as Exhibit T, states that "Websense TRITON solutions give you the best defense against advanced threats.");

- TRITON – Web Security Help: Websense® Web Security Solutions (*see e.g.*, triton_web_help.pdf at 17, attached as Exhibit S, describes how to use the TRITON product and that "[t]o learn to use Websense Web Security solutions and find answers to your questions, browse this guide …");

- Sample ACE Insight™ and ThreatScope™ Reports (*see e.g.*, ACE_Insight_Sample.pdf, attached as Exhibit N, and ThreatReport-Complete.pdf, attached as Exhibit P);

- Websense® CyberSecurity Intelligence™ Services Datasheet (*see e.g.*, datasheet-csi-en.pdf, attached as Exhibit K, states that "[s]ecurity analysts say that in-house resources alone are not enough. Websense CyberSecurity Intelligence (CSI) services let your IT staff join forces with Websense Security Labs™…");

- About Websense® Security Labs (*see e.g.*, http://securitylabs.websense.com/content/about.aspx, attached as Exhibit U, states that "[w]ith emerging threats changing their attack profiles at unprecedented rates, security professionals must wisely predict the future to provide today's proactive solutions.");

- Security Overview: Websense® ACE (Advanced Classification Engine) (*see e.g.*, Websense_ACE_77_WhitePaper.pdf, attached as Exhibit M, states that "[w]ith the declining effectiveness of security solutions previously considered 'core', it is vital to consider what ACE

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

can offer through Websense web, email, data, and mobile security solutions, whether through appliance gateways or cloud security services or a hybrid deployment."); and

- The Websense® ThreatSeeker® Network: Leveraging Websense HoneyGrid Computing (*see e.g.*, WP_HoneyGrid_Computing.pdf at 3, attached as Exhibit H, states when describing ThreatSeeker that "[s]ecurity teams have no choice but to find a reliable way to allow productive use of the Internet, while safeguarding essential enterprise information from loss or theft.").

46.     Websense instructs users, including employees, to use and test the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  For example, Websense provides a technical expert to assist users in installing, configuring, and troubleshooting Websense products.  *See* http://www.websense.com/content/training-and-technical-certification.aspx (attached as Exhibit V). Websense maintains portals at www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index that customers use to access updated patches and hotfixes, product news, evaluations and technical support resources.  *See* http://www.websense.com/content/TechnicalSupportPrograms.aspx (attached as Exhibit W).

47.     Websense provides security solution providers, managed service providers and system integrators with the Websense Global Partner Program to encourage and expand use of the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  The Websense Global Partner Program "offers a suite of benefits to enable business growth, including security industry expertise, tools and support to help increase sales and customer satisfaction."  *See* https://www.websense.com/content/websense-partner-programs.aspx (attached as Exhibit X).  The Websense Global Partner Program also offers access to Websense expertise, discounts, sales and technical training and tools.  Websense also offers the TRITON Security Alliance Program and the OEM Partner Program.  *See* https://www.websense.com/content/websense-triton-security-alliance.aspx (attached as Exhibit Y).

12

Websense utilizes indirect distributors and value-added resellers, which in North America includes Ingram Micro, Arrow Enterprise Computing Solutions and ComputerLinks, to distribute Websense products and provide credit facilities, marketing support and other services. *See* Websense Form 10-Q of March 31, 2013 at 16 (attached as Exhibit Z).

48.     Defendant has had knowledge of the '822 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '822 Patent.  On information and belief, Websense also had prior knowledge of the '822 Patent because Defendant is involved in a lawsuit involving U.S. Patent No. 6,092,194 ("the '194 Patent"), also owned by Finjan, Inc., and which shares the inventor Shlomo Touboul with the '822 Patent.  Furthermore, Websense had knowledge of the '822 Patent because the '822 Patent was cited as prior art during the prosecution of at least the following patents assigned to Websense, or a Websense foreign entity: U.S. Patent Nos. 8,015,174, 8,015,250, 8,020,209, 8,024,471, 8,135,831, 8,141,147, 8,150,817 and 8,244,817.

49.     Websense actively and intentionally maintains its website to promote the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker and to encourage potential customers, users and developers to use the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker in the manner described by Finjan (http://www.websense.com/content/Home.aspx, http://www.websense.com/content/support.aspx, www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

50.     Websense actively updates its websites, including Websense's Support Center, to promote the Websense TRITON Products, Web Security Gateway Products, CSI Service and

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Websense products and services using ACE or ThreatSeeker to encourage customers, users and

developers to practice the methods taught in the '822 Patent

(http://www.websense.com/content/Home.aspx, http://www.websense.com/content/support.aspx,

www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

**COUNT III**
**(Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))**

51.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the

allegations of the preceding paragraphs, as set forth above.

52.     Defendant has infringed and continues to infringe one or more claims of the '633

Patent in violation of 35 U.S.C. § 271(a).

53.     Defendant's infringement is based upon literal infringement or, in the alternative,

infringement under the doctrine of equivalents.

54.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing

products and services have been without the permission, consent, authorization or license of Finjan.

55.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale,

importation and/or offer for sale of Defendant's products and services, including but not limited to

Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products

and services using ACE or ThreatSeeker, which embody the patented invention of the '633 Patent.

56.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to

suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled

to preliminary and/or permanent injunctive relief.

57.     Defendant's infringement of the '633 Patent has injured and continues to injure Finjan

in an amount to be proven at trial.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## COUNT IV
### (Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(b))

58.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

59.     Defendant has induced and continues to induce infringement of at least claims 1, 2, 3, 4, 6, 7, 14, 15, 16, 17, 18, 19, 20, 28, 29, 30 and 31 of the '633 Patent under 35 U.S.C. § 271(b).

60.     In addition to directly infringing the '633 Patent, Defendant indirectly infringes the '633 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '633 Patent, where all the steps of the method claims are performed by either Websense or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '633 Patent.

61.     Defendant knowingly and actively aided and abetted the direct infringement of the '633 Patent by instructing and encouraging its customers, users and developers to use the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  Such instructions and encouragement include, but are not limited to, advising third parties to use the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker in an infringing manner; providing a mechanism through which third parties may infringe the '633 Patent, specifically through the use of the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker, advertising and promoting the use of the Websense TRITON Products, Web Security Gateway Products, CSI Service

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

and Websense products and services using ACE or ThreatSeeker in an infringing manner, and

distributing guidelines and instructions to third parties on how to use the Websense TRITON

Products, Web Security Gateway Products, CSI Service and Websense products and services using

ACE or ThreatSeeker in an infringing manner.

62.    Websense regularly updates and maintains the Websense website

(http://www.websense.com), the Websense Support Center

(http://www.websense.com/content/support.aspx) and the Websense ACE Insight$^{TM}$ and

ThreatScope$^{TM}$ Portals (*see* http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index)

to provide demonstration, instruction, and technical assistance to users to help them use the Websense

TRITON Products, Web Security Gateway Products, CSI Service and Websense products and

services using ACE or ThreatSeeker, including:

- Industry firsts make Websense® TRITON$^{TM}$ second to none (*see e.g.*,
  www.websense.com/content/TRITONseven7.aspx, attached as Exhibit T, states that
  "Websense TRITON solutions give you the best defense against advanced threats.");

- TRITON – Web Security Help: Websense® Web Security Solutions (see e.g.,
  triton_web_help.pdf at 17, attached as Exhibit S, describes how to use the TRITON product
  and that "[t]o learn to use Websense Web Security solutions and find answers to your
  questions, browse this guide …");

- Sample ACE Insight$^{TM}$ and ThreatScope$^{TM}$ Reports (*see e.g.*, ACE_Insight_Sample.pdf,
  attached as Exhibit N, and ThreatReport-Complete.pdf, attached as Exhibit P);

- Websense® CyberSecurity Intelligence$^{TM}$ Services Datasheet (*see e.g.*, datasheet-csi-en.pdf,
  attached as Exhibit K, states that "[s]ecurity analysts say that in-house resources alone are not
  enough.   Websense CyberSecurity Intelligence (CSI) services let your IT staff join forces with
  Websense Security Labs$^{TM}$…");

- About Websense® Security Labs (*see e.g.*,
  http://securitylabs.websense.com/content/about.aspx, attached as Exhibit U, states that "[w]ith
  emerging threats changing their attack profiles at unprecedented rates, security professionals
  must wisely predict the future to provide today's proactive solutions.");

- Security Overview: Websense® ACE (Advanced Classification Engine) (*see e.g.*,
  Websense_ACE_77_WhitePaper.pdf, attached as Exhibit M, states that "[w]ith the declining
  effectiveness of security solutions previously considered 'core', it is vital to consider what ACE

16

COMPLAINT FOR PATENT INFRINGEMENT              CASE NO.

can offer through Websense web, email, data, and mobile security solutions, whether through appliance gateways or cloud security services or a hybrid deployment."); and

• The Websense® ThreatSeeker® Network: Leveraging Websense HoneyGrid Computing (*see e.g.*, WP_HoneyGrid_Computing.pdf at 3, attached as Exhibit H, states when describing ThreatSeeker that "[s]ecurity teams have no choice but to find a reliable way to allow productive use of the Internet, while safeguarding essential enterprise information from loss or theft.").

63.     Websense instructs users, including employees, to use and test the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  For example, Websense provides a technical expert to assist users in installing, configuring, and troubleshooting Websense products.  *See* http://www.websense.com/content/training-and-technical-certification.aspx (attached as Exhibit V). Websense maintains portals at www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index that customers use to access updated patches and hotfixes, product news, evaluations and technical support resources.  *See* http://www.websense.com/content/TechnicalSupportPrograms.aspx (attached as Exhibit W).

64.     Websense provides security solution providers, managed service providers and system integrators with the Websense Global Partner Program to encourage and expand use of the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  The Websense Global Partner Program "offers a suite of benefits to enable business growth, including security industry expertise, tools and support to help increase sales and customer satisfaction."  *See* https://www.websense.com/content/websense-partner-programs.aspx (attached as Exhibit X).  The Websense Global Partner Program also offers access to Websense expertise, discounts, sales and technical training and tools.  Websense also offers the TRITON Security Alliance Program and the OEM Partner Program.  *See* https://www.websense.com/content/websense-triton-security-alliance.aspx (attached as Exhibit Y).

17

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Websense utilizes indirect distributors and value-added resellers, which in North America includes Ingram Micro, Arrow Enterprise Computing Solutions and ComputerLinks to distribute Websense products and provide credit facilities, marketing support and other services.  *See* Websense Form 10-Q of March 31, 2013 at 16 (attached as Exhibit Z).

65.     Defendant has had knowledge of the '633 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '633 Patent.  On information and belief, Websense had knowledge of the '633 Patent because Defendant is involved in a lawsuit involving the '194 Patent, also owned by Finjan, Inc., and which shares the inventor Shlomo Touboul with the '633 Patent.

66.     Websense actively and intentionally maintains its website to promote the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker and to encourage potential customers, users and developers to use the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker in the manner described by Finjan (http://www.websense.com/content/Home.aspx, http://www.websense.com/content/support.aspx, www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

67.     Websense actively updates its websites, including Websense's Support Center, to promote the Websense TRITON Products, Web Security Gateway Products, CSI Service and Websense products and services using ACE or ThreatSeeker to encourage customers, users and developers to practice the methods taught in the '633 Patent (http://www.websense.com/content/Home.aspx, http://www.websense.com/content/support.aspx, www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## COUNT V
### (Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

68.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69.     Defendant has infringed and continues to infringe one or more claims of the '408 Patent in violation of 35 U.S.C. § 271(a).

70.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

71.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

72.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to products or services using ACE, which embody the patented invention of the '408 Patent.

73.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

74.     Defendant's infringement of the '408 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT VI
### (Indirect Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(b))

75.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

76.     Defendant has induced and continues to induce infringement of at least claims 1, 4, 5, 6, and 23 of the '408 Patent under 35 U.S.C. § 271(b).

19

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

77.     In addition to directly infringing the '408 Patent, Defendant indirectly infringes the '408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '408 Patent, where all the steps of the method claims are performed by either Websense or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '408 Patent.

78.     Defendant knowingly and actively aided and abetted the direct infringement of the '408 Patent by instructing and encouraging its customers, users and developers to use products or services using ACE.  Such instructions and encouragement include, but are not limited to, advising third parties to use products or services using ACE in an infringing manner; providing a mechanism through which third parties may infringe the '408 Patent, specifically through the use of products or services using ACE, advertising and promoting the use of products or services using ACE in an infringing manner, and distributing guidelines and instructions to third parties on how to use products or services using ACE in an infringing manner.

79.     Websense regularly updates and maintains the Websense website (http://www.websense.com) and the Websense Support Center (http://www.websense.com/content/support.aspx), as well as the Websense ACE Insight$^{TM}$ and ThreatScope$^{TM}$ Portals (*see* http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index) to provide demonstration, instruction, and technical assistance to users to help them use products or services using ACE, including:

- Security Overview: Websense® ACE (Advanced Classification Engine) (*see e.g.*, Websense_ACE_77_WhitePaper.pdf, attached as Exhibit M, states that "[w]ith the declining

effectiveness of security solutions previously considered 'core', it is vital to consider what ACE can offer through Websense web, email, data, and mobile security solutions, whether through appliance gateways or cloud security services or a hybrid deployment.");

- Sample ACE Insight™ and ThreatScope™ Reports (*see e.g.*, ACE_Insight_Sample.pdf, attached as Exhibit N, and ThreatReport-Complete.pdf, attached as Exhibit P);

- About Websense® Security Labs (*see e.g.*, http://securitylabs.websense.com/content/about.aspx, attached as Exhibit U, states that "[w]ith emerging threats changing their attack profiles at unprecedented rates, security professionals must wisely predict the future to provide today's proactive solutions.");

- Industry firsts make Websense® TRITON™ second to none (*see e.g.*, www.websense.com/content/TRITONseven7.aspx, attached as Exhibit T, states that "Websense TRITON solutions give you the best defense against advanced threats.");

- TRITON – Web Security Help: Websense® Web Security Solutions (*see e.g.*, triton_web_help.pdf at 17, attached as Exhibit S, describes how to use the TRITON product and that "[t]o learn to use Websense Web Security solutions and find answers to your questions, browse this guide …"); and

- Websense® CyberSecurity Intelligence™ Services Datasheet (*see e.g.*, datasheet-csi-en.pdf, attached as Exhibit K, states that "[s]ecurity analysts say that in-house resources alone are not enough. Websense CyberSecurity Intelligence (CSI) services let your IT staff join forces with Websense Security Labs™…").

80.     Websense instructs users, including employees, to use and test products or services using ACE. For example, Websense provides a technical expert to assist users in installing, configuring, and troubleshooting Websense products. *See* http://www.websense.com/content/training-and-technical-certification.aspx (attached as Exhibit V). Websense maintains portals at www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index that customers use to access updated patches and hotfixes, product news, evaluations and technical support resources. *See* http://www.websense.com/content/TechnicalSupportPrograms.aspx (attached as Exhibit W).

81.     Websense provides security solution providers, managed service providers and system integrators with the Websense Global Partner Program to encourage and expand use of products or services using ACE. The Websense Global Partner Program "offers a suite of benefits to enable

21

business growth, including security industry expertise, tools and support to help increase sales and

customer satisfaction." *See* https://www.websense.com/content/websense-partner-programs.aspx

(attached as Exhibit X).  The Websense Global Partner Program also offers access to Websense

expertise, discounts, sales and technical training and tools.  Websense also offers the TRITON

Security Alliance Program and the OEM Partner Program.  *See*

https://www.websense.com/content/websense-triton-security-alliance.aspx (attached as Exhibit Y).

Websense utilizes indirect distributors and value-added resellers, which in North America includes

Ingram Micro, Arrow Enterprise Computing Solutions and ComputerLinks to distribute Websense

products and provide credit facilities, marketing support and other services.  *See* Websense Form 10-

Q of March 31, 2013 at 16 (attached as Exhibit Z).

82.     Defendant has had knowledge of the '408 Patent at least as of the time it learned of

this action for infringement and, by continuing the actions described above, has had the specific intent

to or was willfully blind to the fact that its actions would induce infringement of the '408 Patent.  On

information and belief, Websense had knowledge of the '408 Patent because Defendant is involved in

a lawsuit involving the '194 Patent, also owned by Finjan, Inc., and which shares the inventor

Shlomo Touboul with the '408 Patent.

83.     Websense actively and intentionally maintains its website to promote products or

services using ACE and to encourage potential customers, users and developers to use products or

services using ACE in the manner described by Finjan

(http://www.websense.com/content/Home.aspx, http://www.websense.com/content/support.aspx,

www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

84.     Websense actively updates its websites, including Websense's Support Center, to

promote products or services using ACE to encourage customers, users and developers to practice the

methods taught in the '408 Patent (http://www.websense.com/content/Home.aspx,

http://www.websense.com/content/support.aspx, www.MyWebsense.com, http://csi.websense.com/

and http://csi.websense.com/ThreatScope/Index).

## COUNT VII
### (Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))

85.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

86.     Defendant has infringed and continues to infringe one or more claims of the '154 Patent in violation of 35 U.S.C. § 271(a).

87.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

88.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

89.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Data Security Products, which embody the patented invention of the '154 Patent.

90.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

91.     Defendant's infringement of the '154 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

///

///

///

COMPLAINT FOR PATENT INFRINGEMENT                        CASE NO.

**PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.     An entry of judgment holding Defendant has infringed and is infringing the Patents-in-Suit and has induced infringement of the '822 Patent, the '633 Patent, and the '408 Patent;

B.     A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the Patents-in-Suit, or inducing the infringement of the '822 Patent, the '633 Patent, and the '408 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.     An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the Patents-in-Suit, said damages to be no less than a reasonable royalty;

D.     A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285;

E.     An accounting of all infringing sales and revenues, together with postjudgment interest and prejudgment interest from the first date of infringement of the Patents-in-Suit; and

F.     Such further and other relief as the Court may deem proper and just.

///

///

///

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Respectfully submitted,

Dated:  September 23, 2013          By:  _/s/ Paul J. Andre_____
                                   Paul J. Andre
                                   Lisa Kobialka
                                   James Hannah
                                   KRAMER LEVIN NAFTALIS
                                   & FRANKEL LLP
                                   990 Marsh Road
                                   Menlo Park, CA 94025
                                   Telephone: (650) 752-1700
                                   Facsimile: (650) 752-1800
                                   pandre@kramerlevin.com
                                   lkobialka@kramerlevin.com
                                   jhannah@kramerlevin.com

                                   *Attorneys for Plaintiff*
                                   FINJAN, INC.

25

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

## **DEMAND FOR JURY TRIAL**

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  September 23, 2013

By:   */s/ Paul J. Andre*
Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.